```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/14
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN HOME ASSURANCE a/s/o
CROWN EQUIPMENT,

                 Plaintiff,

v.

A.P. MOLLER-MAERSK,

                 Defendant.

**MEMORANDUM
OPINION & ORDER**

07 Civ. 10947 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This action, formerly before the Honorable Barbara S. Jones,[1] arises from a 2006 train derailment near Newberry Springs, California. Plaintiff American Home Assurance, the subrogee of Crown Equipment Corporation, seeks to recover damages that the derailment caused to Crown's cargo, which was in the process of being shipped from Ohio and Indiana to Australia. Defendant A.P. Maersk, an ocean carrier, agreed to transport the goods pursuant to the terms of a "through bill of lading" – essentially a single shipping contract that covered the entire journey. Maersk subcontracted with BNSF Railway Company to complete the domestic rail portion of the trip.

        As a result of prior rulings in this action by Judge Jones and Chief Judge Preska, the narrow questions before this Court are whether (1) Maersk is liable to American Home under the Carmack Amendment to the Interstate Commerce Act; or (2) whether Maersk agreed that its liability for cargo damage would be determined in accordance with the Carmack Amendment. For the reasons set forth below, this Court concludes that Maersk is not a "rail carrier" under the Carmack Amendment, and that it did not agree that its liability would be determined in

---

[1] This matter was reassigned to this Court on May 29, 2013 (Dkt. No. 117).

accordance with the Carmack Amendment. Accordingly, Maersk's motion for summary judgment (Dkt. No. 108) will be granted.

## BACKGROUND

Crown, a manufacturer of forklift machinery and mechanical parts, booked an international shipment of goods with Maersk, and then purchased insurance from American Home to cover the full value of its cargo. (Def. R. 56.1 Stmt. (Dkt. No. 111) ¶ 4, 11; Pltf. R. 56.1 Stmt. (Dkt. No. 114) ¶ 4, 11) Having paid Crown's insurance claim, American Home now seeks full recovery for the damaged cargo under the Carmack Amendment, a statute that regulates domestic rail carriers and provides for near strict liability. (Cmplt. (Dkt. No. 1) at 1) Because Crown had covenanted not to sue any of Maersk's subcontractors,[2] American Home chose to sue Maersk rather than BNSF.

In December 2006, Crown shipped three containers of construction equipment from its facilities in Ohio and Indiana to Australia. (Def. R. 56.1 Stmt. (Dkt. No. 111) ¶ 1)[3] Crown's freight forwarder, Panalpina, Inc., contracted with Maersk to arrange delivery of the goods from Illinois to their final destination in Australia. (Id. ¶ 3) The contract between Panalpina and Maersk provided that Maersk's standard form bill of lading would apply. (Id. ¶ 6) "A bill of lading 'records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage.'"

---

[2] See Maersk Bill of Lading § 4.2, Merrick Decl., Ex. G (Dkt. No. 110); see also and Pltf. Opp. Br. (Dkt. No. 112) at 2 n.1 ("Subsection 4.2 of Maersk's Multimodal Bill of Lading terms and conditions purportedly prohibited plaintiff from suing BNSF directly.").

[3] Unless otherwise noted, citations to the parties' Local Rule 56.1 statements, including those submitted in connection with prior motions, concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 561 U.S. 89, __, 130 S.Ct. 2433, 2439 (2010) (quoting Norfolk Southern R. Co. v. James N. Kirby, 543 U.S. 14, 18-19 (2004)). The bill of lading at issue here was intended to be a "through" bill of lading, i.e., a bill of lading that covered both the land-based and ocean segments of the journey. (Def. R. 56.1 Stmt. (Dkt. No. 111) ¶ 9)

Although Maersk never issued a physical copy of its standard form bill of lading, it did issue electronic versions, and the parties do not dispute that the standard form bill of lading set forth the contractual terms of their relationship.[4] (Id. ¶ 8) Maersk's bill of lading contains several provisions that are relevant to this action.

First, the bill of lading provides for different loss calculations depending on where the damage to a shipment occurs. For example, consistent with the Carriage of Goods by Sea Act (COGSA), the bill limits Maersk's liability to $500 per shipment "where the Carriage is Port-to-Port" or "where the stage of Carriage where loss or damage occurred is not known." (See Merrick Decl., Ex. G (Dkt. No. 110) ¶¶ 5.1 & 6.1(c)). "[I]f the loss or damage is known to have occurred during Carriage inland in the USA," however, Maersk's liability is determined "in accordance with the contract of carriage or tariffs of any inland carrier. . . ." (Id. ¶ 6.2(d)) Second, the bill of lading permits Maersk to subcontract "any part" of the transportation "on any terms whatsoever." (Id. ¶ 4.1 ("The carriers shall be entitled to subcontract on any terms whatsoever the whole or any part of the carriage.")) Third, the bill includes a so-called "Himalaya Clause," which purports to extend the bill's liability protections to third-party

---

[4] Maersk's standard practice was to only issue a hard copy of the bill of lading once the goods were loaded on to its ocean vessels. (Def. R. 56.1 Stmt. (Dkt. No. 111) ¶ 8)

3

subcontractors.[5] (Id. ¶ 4.2 (providing that a "subcontractor shall have the benefit of all Terms and Conditions of whatsoever nature herein contained or otherwise benefitting the Carrier")) Fourth, the bill includes a covenant requiring the "Merchant," i.e., the shipper, not to sue any entity other than Maersk, including Maersk's subcontractors. (Id. ¶ 4.2 ("The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent or Subcontractor of the Carrier . . . ."))

Pursuant to its bill of lading, Maersk arranged transportation for the entire journey and subcontracted with BNSF to provide rail carriage in the United States. (Def. R. 56.1 Stmt. (Dkt. No. 111) ¶ 7) The subcontract was governed by a pre-existing agreement between BNSF and Maersk ("the International Transportation Agreement"), which incorporates BNSF's Intermodal Rules & Policies Guide by reference.[6] (BNSF R. 56.1 Stmt. (Dkt. No. 41) ¶¶ 7-8) Item 63(3) of BNSF's Rules provides that (1) it shall not be liable for any loss or damages to goods absent proof of negligence, and (2) in any event, its liability will be limited to $250,000 per shipment. (Lenck Aff., Ex. F (Dkt. No. 30))

BNSF accepted delivery of the shipments at its rail depots in Illinois on December 15, 2006, and December 18, 2006, and issued three separate movement waybills. (BNSF R. 56.1 Smt. (Dkt. No. 41) ¶¶ 14, 18-19) BNSF and American Home dispute whether these waybills constitute additional bills of lading or merely documents similar to shipping receipts. (Compare id. at ¶¶ 17-20 with Pltf. Dec. 4, 2009 R. 56.1 Stmt. (Dkt. No. 45) ¶¶ 17-20) What is not disputed is that the train carrying these shipments derailed near Newberry Springs, California,

---

[5] "A Himalaya Clause extends contractual protections that would otherwise apply only to the entity issuing the bill of lading to the subcontractors of the issuing entity as well." Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 142 (2d Cir. 2010).

[6] See also Am. Home Assur. Co. v. Panalpina, Inc., 07 CV 10947 BSJ, 2011 WL 666388, at *2 (S.D.N.Y. Feb. 16, 2011).

4

and that Crown's cargo was damaged. (Pltf. March 8, 2012 R. 56.1 Stmt. (Dkt. No. 68) ¶¶ 3-4) BNSF's investigation determined that the derailment was due to a track defect in a rail system side joint bar. (Id. ¶ 5)

## PROCEDURAL HISTORY

American Home filed this lawsuit on November 30, 2007, naming Maersk and Panalpina as defendants and alleging claims for breach of contract, bailment and negligence. (Cmplt. (Dkt. No. 1) at 3-5) The case was assigned to Judge Jones. On February 6, 2008, Maersk impleaded BNSF pursuant to Fed. R. Civ. P. 14(c). (Third-Party Cmplt. (Dkt. No. 7) ¶ 16) In its third-party complaint, Maersk sought indemnification from BNSF. (Id. at 5) In a February 13, 2009 stipulation, American Home agreed to the dismissal of Panalpina from this action. (Dkt. No. 22)

Maersk and BNSF both moved for partial summary judgment in November 2009. (Dkt. Nos. 29, 38) BNSF argued that its liability to American Home, if any, is limited to $500 per package under COGSA. (BNSF Partial Summary Judgment Br. (Dkt. No. 40) at 17-19) Maersk sought, inter alia, summary judgment on its indemnity claim against BNSF. (Def. Partial Summary Judgment Br. (Dkt. No. 28)) American Home, in opposing the motions, argued that the Carmack Amendment, and not COGSA, governs this case and that BNSF and Maersk are both liable under its terms. (Pltf. Opp. Br. (Dkt. No. 43) at 7-9)

The primary issue in this round of summary judgment briefing is which of two statutes – the Carmack Amendment or COGSA – applies to the rail portion of an international multi-modal shipping contract such as that at issue here. That issue is critically important, because these statutes impose radically different liability regimes on cargo carriers. The Carmack Amendment, which by its terms applies to rail and motor carriers, "imposes something

5

akin to strict liability on shippers[.]" Mitsui Sumitomo Ins. Co. Ltd. v. Evergreen Marine Corp., 621 F.3d 215, 216 (2d Cir. 2010). COGSA, which covers ocean carriers, provides a more carrier-friendly negligence regime that includes a $500 per package damages limitation. Id.[7]

On February 11, 2011, Judge Jones issued a memorandum opinion and order denying BNSF's and Maersk's motions in their entirety. Am. Home Assur. Co. v. Panalpina, Inc., 07 CV 10947 BSJ, 2011 WL 666388 (S.D.N.Y. Feb. 16, 2011) (Dkt. No. 58). Judge Jones accepted American Home's argument that the Carmack Amendment, and not COGSA, governs this case. According to Judge Jones, Carmack's "plain language . . . applies when the first rail carrier in the chain of transportation accept[s] cargo at the shipment's point of origin." Id. at *4. Judge Jones likewise rejected BNSF's alternative argument that it had contracted out of Carmack liability. Id. at *6. She found that "Crown was never offered full Carmack liability by either Maersk or BNSF." Id. Although Judge Jones concluded that the Carmack Amendment governs this case, she did not address American Home's contention that Maersk is liable as a "rail carrier" under that statute. (Pltf. Opp. Br. (Dkt. No. 43) at 11-13) Finally, Judge Jones rejected as premature Maersk's motion for partial summary judgment on its indemnity claim against BNSF, given that liability for the damaged goods had not yet been determined. Am. Home Assur. Co., 2011 WL 666388, at *7.

---

[7] The significant differences between these statutes have led ocean carriers to insert "Himalaya clauses" into their standard-form bills of lading, in an attempt to extend COGSA's protections to all subcontractors, including domestic rail carriers. In a 2010 decision, the Supreme Court held that the Carmack Amendment does not displace such contract provisions where the contract at issue involves an import shipment. Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp., 561 U.S. 89, __, 130 S.Ct. 2433, 2439 (2010). Regal-Beloit does not address whether the same rule applies in the export context at issue here. See Regal-Beloit, 130 S.Ct. at 2444 ("Today's decision need not address the instance where goods are received at a point in the United States for export.").

On March 9, 2012, American Home moved for summary judgment on liability and damages, asserting that BNSF and Maersk were both liable pursuant to the Carmack Amendment. (Dkt. No. 69) Before that motion was decided, however, Maersk and BNSF entered into a stipulation of dismissal, in which Maersk agreed to dismiss its third-party complaint against BNSF pursuant to Fed. R. Civ. P. Rule 41(a)(1)(A)(ii). (Dkt. No. 90) American Home objected to the stipulation of dismissal. (Jan. 4, 2013 Order (Dkt. No. 91) at 4) Because BNSF had been impleaded by Maersk pursuant to Fed. R. Civ. P. 14(c), American Home argued that its consent was required before BNSF could be dismissed from the action. (Id.)

Rule 14(c) provides that "[i]f a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable – either to the plaintiff or to the third party-plaintiff . . . ." Fed. R. Civ. P. 14(c). Courts have held that where "'such a demand is made, the action is treated as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff who is the original defendant in the lawsuit.'" (Jan. 4, 2013 Order (Dkt. No. 91) at 3-4) (citing Shipping Corp. v. American Bureau of Shipping, No. 54 Civ. 1920, 1989 WL 97821, at *1 (S.D.N.Y. Aug. 17, 1989)) Maersk and BNSF contended, however, that Rule 14(c) was no longer applicable, because the Court had determined that the Carmack Amendment applied, and thus American Home's claims were not maritime in nature. (Id. at 4)

On January 4, 2013, Judge Jones issued an order rejecting that argument and the proposed stipulation of dismissal. (Id. at 4-5) Judge Jones held that her "decision regarding the scope of BNSF's liability under the Carmack Amendment did not alter the maritime nature of

7

American Home's claims." (Id. at 5) That same day, Judge Jones retired from the bench, and the case was temporarily transferred to Chief Judge Loretta A. Preska.

BNSF sought reconsideration of Judge Jones's order. (Dkt. No. 92) On March 12, 2013, Judge Preska granted that motion. (Mar. 12, 2013 Order (Dkt. No. 97)) Although Judge Preska declined to revisit Judge Jones's earlier summary judgment determination, she concluded that the January 4, 2013 order was erroneous in that "the Carmack Amendment provides the exclusive remedy for a shipper's compensation for actual loss or injury." (Id. at 4 (citing Cleveland v. Beltman North Am. Co., Inc., 30 F.3d 373, 380-81 (2d Cir. 1994))) In other words, once Judge Jones decided that the Carmack Amendment applies to the loss at issue, any maritime claims were necessarily pre-empted. (Id. at 6 ("[T]he Carmack Amendment governs the entire scope of Plaintiff's claims and . . . such claims are non-maritime in nature.")) To find otherwise "would be to impose two separate and parallel liability regimes for the exact same damage under a bill of lading," a result that "would appear to be in conflict with" Supreme Court precedent. (Id. at 5 (citing Regal-Beloit, 130 S.Ct. at 2447) ("Applying two different bill of lading regimes to the same through shipment would undermine COGSA and international container-based multimodal transport."))) Accordingly, Judge Preska vacated Judge Jones's January 4, 2013 order and "so ordered" the stipulation dismissing BNSF. (Id. at 7)

Judge Preska then stayed further briefing regarding American Home's summary judgment motion, and granted Maersk permission to move for summary judgment. (Apr. 2, 2013 Order (Dkt. No. 107)) In its motion, Maersk argues that it cannot be held liable under the Carmack Amendment because it is not a "rail carrier" within the meaning of that statute. (Def. Br. (Dkt. No. 109) at 4-12) American Home, in response, argues that it is not seeking to hold Maersk liable under the Carmack Amendment; instead, American Home contends that Maersk

8

agreed to be bound by the Carmack Amendment's liability regime in its standard form bill of lading. (Pltf. Opp. Br. (Dkt. No. 112) at 4-8)

This case was transferred to this Court on May 29, 2013. (Dkt. No. 117) On September 26, 2013, this Court denied American Home's motion for summary judgment without prejudice, finding that Maersk's summary judgment motion presented a potentially dispositive issue that might obviate the need to rule on American Home's motion. (Dkt. No. 122) This Court further explained that it would reinstate American Home's summary judgment motion if it found that Maersk's liability is governed by the Carmack Amendment, either statutorily or contractually. (Id.)

## DISCUSSION

### I. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).

A court deciding a summary judgment motion must "'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001)). However, a "'party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . [M]ere conclusory allegations or denials . . . cannot by themselves create

9

a genuine issue of material fact where none would otherwise exist.'" Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

## II. **THE CARMACK AMENDMENT**

The Carmack Amendment to the Interstate Commerce Act, enacted in 1906, provides in relevant part:

> A rail carrier providing transportation or service subject to the jurisdiction of the [Surface Transportation] Board under this part shall issue a receipt or bill of lading for property it receives for transportation under this part. That rail carrier and any other carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Board under this part are liable to the person entitled to recover under the receipt or bill of lading.

49 U.S.C.A. § 11706 (emphasis added). The Interstate Commerce Act defines a "rail carrier" as "a person providing common carrier railroad transportation for compensation[.]" 49 U.S.C. § 10102(5).

## III. **THE PARTIES' ARGUMENTS**

Maersk presents a straightforward argument in support of its summary judgment motion. Pursuant to Judge Preska's March 12, 2013 order, it is the law of the case that the Carmack Amendment "governs the entire scope of Plaintiff's claim." (Mar. 12, 2013 Order (Dkt. No. 97) at 6) Accordingly, for American to prevail, it must demonstrate that the Carmack Amendment provides a statutory cause of action against an ocean carrier such as Maersk. Maersk argues, however, that the Carmack Amendment is limited, by its plain terms, to "rail carriers," and that Supreme Court and Second Circuit cases interpreting the Carmack Amendment mandate this conclusion. (Def. Br. (Dkt. No. 109) at 4-12 (citing Regal-Beloit, 130 S.Ct. at 2439-40; Rexroth B.V. v. Ocean World Lines, Inc., 547 F.3d 351, 359-60 (2d Cir. 2008), abrogation on other grounds recognized by Mitsui Sumitomo, 621 F.3d at 219 n.4)).

10

American Home appears to concede that the Carmack Amendment does not apply directly to ocean carriers such as Maersk. However, American Home argues that Maersk is <u>contractually</u> liable because it "expressly agreed to be bound by the liability regime which would govern the inland carrier in whose custody the loss or damage occurred." (Opp. Br. (Dkt. No. 112) at 5) In response, Maersk contends that this argument is both procedurally foreclosed by the law of the case and substantively meritless. (Def. Reply Br. (Dkt. No. 115) at 4-7)

## IV.   ANALYSIS

### A.   Maersk is Not Statutorily Liable Under the Carmack Amendment

In its own summary judgment motion – the motion that the Court denied without prejudice – American Home had argued that Maersk is statutorily liable under the Carmack Amendment. (Pltf. Br. (Dkt. No. 73) at 8) While American Home appears to have abandoned that argument in opposing Maersk's summary judgment motion, see Pltf. Br. (Dkt. No. 112), this Court has nonetheless considered whether there is a basis to hold Maersk statutorily liable under the Carmack Amendment.

The Supreme Court has explained that the Carmack Amendment is intended to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of the goods." Reider v. Thompson, 339 U.S. 113, 119 (1950). "In cases where it applies, Carmack imposes upon 'receiving rail carrier[s]' and 'delivering rail carrier[s]' liability for damage caused during the rail route under the bill of lading, regardless of which carrier caused the damage." Regal-Beloit, 130 S.Ct. at 2441 (quoting 49 U.S.C. § 11706(a)). Freight forwarders may also be subject to Carmack Amendment liability under certain circumstances. 49 U.S.C. § 14706(a)(2). Accordingly, in deciding whether Maersk may be held liable under the Carmack Amendment, this Court must

11

determine whether Maersk can be considered a receiving or delivering rail carrier or a freight forwarder.

Maersk is plainly not a receiving rail carrier. "A receiving rail carrier is the initial carrier, which 'receives' the property for domestic rail transportation at the journey's point of origin." Regal-Beloit, 130 S.Ct. at 2443. It is undisputed that BNSF, and not Maersk, received Crown's cargo "at the journey's point of origin [in Illinois]." (See Pltf. Br. (Dkt. No. 73) at 7) Moreover, "[a] carrier does not become a receiving carrier simply by accepting goods for further transport from another carrier in the middle of an international shipment under a through bill." Id. at 2445.

Maersk is also not a delivering carrier. Under the Carmack Amendment, a delivering carrier "is deemed to be the rail carrier performing the line-haul transportation nearest the destination." 49 U.S.C. § 11706(a) (emphasis added). Such a carrier must also "provid[e] transportation or service subject to the jurisdiction of the [Surface Transportation] Board under this part." Id. Under 49 U.S.C. § 10501(b), the STB's jurisdiction over railroad carriers is "exclusive." Ocean carriers, by contrast, are subject to the jurisdiction of the Federal Maritime Commission ("FMC") under 46 U.S.C. § 40102. See Regal-Beloit, 130 S.Ct. at 2448 (noting that "ocean vessels . . . are overseen by the Federal Maritime Commission" while "[r]ail carriers . . . remain subject to the STB's regulation to the extent they operate within the United States"); Rexroth, 547 F.3d at 356-57 (explaining that ocean carriers "are subject to the jurisdiction of the FMC, not the STB," and do not "qualify under Carmack as 'rail carriers' subject to STB jurisdiction"). Here, it is undisputed that Maersk is an ocean carrier, not a rail carrier. American Home has, in fact, conceded that BNSF – not Maersk – was both the receiving and delivering rail carrier here for purposes of the Carmack Amendment. (See Pltf. Br. (Dkt. No. 73) at 7) Because

Maersk is not a rail carrier subject to the jurisdiction of the STB, it does not qualify as a delivering carrier.

Finally, contrary to American Home's prior assertions, see (Dkt. No. 80) at 4-5, Maersk is not a freight forwarder under the Carmack Amendment. The Second Circuit has explained that "[a] freight forwarder . . . simply facilitates the movement of cargo to the ocean vessel. . . . Freight forwarders generally make arrangement for the movement of cargo at the request of clients and are vitally different from carriers, such as vessels, truckers, stevedores or warehouses, which are directly involved in transporting the cargo." Prima U.S. Inc. v. Panalpina, Inc., 223 F.3d 126, 129 (2d Cir. 2000) (emphasis added). Under the Interstate Commerce Act, "freight forwarder means a person holding itself out to the general public (other than as a . . . water carrier) to provide transportation of property for compensation. . . ." 49 U.S.C. § 13102(8). Here, Maersk is necessarily excluded as a freight forwarder under both the Interstate Commerce Act's definition and the Second Circuit's interpretation of the Carmack Amendment. Under these authorities, it is clear that Panalpina, not Maersk, acted as Crown's freight forwarder in this case.

This Court's conclusion that Maersk is not statutorily liable under the Carmack Amendment is also dictated by Supreme Court and Second Circuit precedent. In Regal-Beloit, the Supreme Court held that an ocean carrier was not a receiving rail carrier, and hence was not required to issue a bill of lading under the Carmack Amendment, where it arranged for transportation of goods from China to the United States. According to the Regal-Beloit court, "[t]hat [the ocean carrier] chose to use rail transport to complete one segment of the journey under these essentially maritime contracts, does not put '[the ocean carrier] within Carmack's

13

reach and thus does not require it to issue Carmack bills of lading.'" Regal-Beloit, 130 S.Ct. at 2444 (internal citation and quotation marks omitted).

Likewise, in Rexroth, the Second Circuit noted that there is "no appellate authority to support the conclusion that providing rail transportation may also include the activity of arranging for – but not actually performing – rail transportation." Rexroth, 547 F.3d at 364. The Rexroth court also noted that the STB has itself limited the definition of "rail carriers" to direct participants in the industry. Id. The court went on to reject the notion "that an entity that merely arranges for rail transportation by a third party rail carrier is itself a 'rail carrier' subject to the Carmack Amendment." Id. The Rexroth court further explained that it would "not construe '[a] rail carrier providing transportation' to include another, separate class of common carriers that do not own or operate rail lines or other equipment used in connection with a railroad." Id.

For all of these reasons, the Court finds that Maersk is not statutorily liable under the Carmack Amendment.

### B. **Maersk Did Not Contract Into Carmack Liability**

While appearing to concede that Maersk cannot be held statutorily liable under the Carmack Amendment, American Home argues that Maersk – through its bill of lading – nevertheless bound itself contractually to Carmack's terms. Before considering the merits of American Home's current argument, it is worth noting that both sides have directly contradicted earlier interpretations they offered of the key provisions in the bill of lading.

Maersk initially argued that its liability to American Home, if any, was capped at $250,000 per shipment, as a result of Section 6.2(d) of the bill of lading. (Def. Br. (Dkt. No. 31) at 12-13) Section 6.2(d) provides, in relevant part:

14

> Where the stage of Carriage where the loss or damage occurred is known . . . the liability of the Carrier . . . shall be determined. . . .
>
> (d) if the loss or damage is known to have occurred during Carriage inland in the USA, in accordance with the contract of carriage or tariffs of any inland carrier in whose custody the loss or damage occurred or, in the absence of such contract or tariff by the provisions of Clause 6.1, and in either case the law of the State of New York will apply . . . .

(Radzik Decl., Ex. 1 (Dkt. No. 113) § 6.2(d)). Since Maersk's contract with BSNF incorporated BNSF's Rules, which in turn provided for a maximum recovery of $250,000 per shipment, Maersk reasoned that its liability, if any, was limited to that amount. (Def. Br. (Dkt. No. 31) at 13)

American Home argued, however, that Maersk had contracted into Carmack liability by virtue of Section 6.2(a) of the bill of lading. Section 6.2(a) provides that the carrier's liability is to be determined as follows:

> Where the stage of Carriage where the loss or damage occurred is known . . . the liability of the Carrier . . . shall be determined:
>
> (a) by the provisions contained in any international convention or national law which provisions: (i) cannot be departed from by private contract to the detriment of the Merchant, and (ii) would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of Carriage during which the loss or damage occurred . . . .

(Radzik Decl., Ex. 1 (Dkt. No. 113) § 6.2(a)) American Home "construe[d] § 6.2 Subsection (a)(i)(ii) to mean that Maersk's liability is determined by the Carmack Amendment, the national law which cannot be departed from without independent notice to the shipper required under the Staggers Act, and which would have applied if [American Home] had made a separate contract with BNSF for the rail portion of the carriage from Chicago to Long Beach." (Pltf. Reply Br. (Dkt. No. 80) at 4)

American Home now argues, however, that § 6.2(d) – and not § 6.2(a) – is the governing provision in the bill of lading. (Pltf. Opp. Br. (Dkt. No. 112) at 4-5) This shift appears to evince American Home's belated recognition that the Second Circuit previously determined – in Royal & Sun Alliance Ins., PLC v. Ocean World Lines, Inc., 612 F.3d 138, 146-47 (2d Cir. 2010) – that the language from § 6.2(a) that American Home was relying on does not demonstrate an intent to contract into Carmack liability.

In Royal & Sun Alliance, the insurer made arguments similar to those of American Home based on nearly identical language in a bill of lading. The relevant bill of lading language in Royal & Sun provided that the ocean carrier's

> liability for loss or damage to the cargo shall be determined by the provisions contained in any national law, which provisions cannot be departed from by private contract to the detriment of the Merchant, and would have applied if the Merchant had made a separate and direct contract with the Carrier in respect of the particular stage of the carriage where the loss or damage occurred and received as evidence thereof any particular document which must be issued in order to make such national law applicable.

612 F.3d at 146. The Second Circuit rejected the insurer's argument that the ocean carrier had contracted into Carmack liability via this term. The court explained that, "[b]ecause its provisions can be departed from by private contract, the Carmack Amendment . . . is not such a national law." Id.

American Home has abandoned its argument under Section 6.2(a), and after six years of litigation now asserts – for the first time – that Section 6.2(d) is the governing clause.

Maersk, however, has also reversed course. Having previously argued that Section 6.2(d) of the bill of lading defines its scope of liability, Maersk now argues that Section 6.2(d) has been rendered irrelevant by Judge Preska's finding that "the Carmack Amendment governs the entire scope of Plaintiff's claims and . . . such claims are non-maritime in nature."

16

(Mar. 12, 2013 Order (Dkt. No. 97) at 6)  Judge Preska also found that "Carmack's liability regime is inapposite to maritime contracts." (Id. at 5 (citing Regal-Beloit, 130 S.Ct. at 2449 ("[Congress] has not imposed Carmack's regime, textually and historically limited to the carriage of goods received for domestic rail transport, onto what are 'essentially maritime' contracts.")))  Hence, according to Maersk, American Home's contract claim under the bill of lading is now pre-empted. (Def. Reply Br. (Dkt. No. 115) at 4)

Maersk also argues that Section 6.2(d) does not support American Home's assertion that Maersk contracted into Carmack liability.  According to Maersk, Section 6.2(d) is merely a choice of law provision that reflects the parties' agreement that New York law would govern any contract disputes between them. (Id. at 6)  Given Judge Preska's finding that the Carmack Amendment – a federal law – "governs the entire scope of Plaintiff's claims," the choice of law provision in the bill of lading is – according to Maersk – no longer relevant. (Id.) Maersk also points out that, to the extent that the parties intended for New York law to govern this dispute, that would support a finding that Maersk intended to contract out of Carmack liability, not contract into it. (Id.)

In response, American Home argues that (1) Royal & Sun is distinguishable, because it involved an import rather than an export shipment; and (2) under Section 6.2(d), "Maersk's liability to Plaintiff is governed by the liability regime that governs BNSF, an interstate rail carrier." (Pltf. Opp. (Dkt. No. 112) at 5-7)

Neither argument is persuasive.  As to Royal & Sun, while that case involves an import shipment rather than an export shipment, there is no evidence that that fact had any bearing on the Second Circuit's holding that the relevant bill of lading provision – nearly identical to that at issue here – does not serve to bind an ocean carrier to the Carmack

17

Amendment's strict liability regime. The holding in Royal Sun flows from the Second Circuit's conclusion that the Carmack Amendment is not a "national law" that "cannot be departed from." Royal Sun, 612 F.3d at 146. There is no evidence that the import nature of the shipment played any role in the decision.

As for American Home's argument that Maersk contracted into Carmack liability through Section 6.2(d) of the bill of lading, that contention finds no support in the bill of lading's text. Maersk did not agree, as American Home suggests, to be "governed by the liability regime that governs BNSF." (Pltf. Opp. Br. (Dkt. No. 112) at 7) Rather, Section 6.2(d) is a choice of law provision providing that, in the event a shipment of goods is damaged during carriage in the inland United States, Maersk's liability is to be adjudged according to its contract with BNSF and in accordance with New York law. There is no evidence that, in agreeing to this provision, the parties intended that Maersk would be bound by the liability rules set forth in the Carmack Amendment.

Having prevailed on its argument that the Carmack Amendment governs this case, American Home must live with the consequences. The applicability of the Carmack Amendment here is the law of the case, as is Judge Preska's ruling that "the Carmack Amendment provides the exclusive remedy for a shipper's compensation for actual loss or injury." See Am. Home Assur. Co., 2011 WL 666388, at *5; March 12, 2013 Order (Dkt. No. 97) at 4) Given that the Carmack Amendment does not apply to an ocean carrier such as Maersk, and given that Maersk did not contractually agree to be bound by the liability regime set forth in the Carmack Amendment, American Home has no claim under the Carmack Amendment against Maersk.

## CONCLUSION

For the reasons stated above, Maersk's motion for summary judgment is granted.

The Clerk of the Court is directed to terminate the motion (Dkt. No. 108) and to close this case.

Dated: New York, New York
      March 31, 2014

SO ORDERED.

*Paul G. Gardephe* (signature)

Paul G. Gardephe
United States District Judge